

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-159-CR**

JESSE MARIANO VASQUEZ                                          APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

**MEMORANDUM OPINION**[1]

----------

**Introduction**

Appellant Jesse Mariano Vasquez appeals his conviction for kidnapping. In two points, he asserts that the trial court erred when it denied his requested jury charge on the lesser-included offense of unlawful restraint and that the evidence is factually insufficient to support his conviction. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## Background Facts

In 2004, Leandra Castillo and Vasquez began a relationship. They had a son in 2006. Castillo considered Vasquez as her common-law husband. They lived together in Castillo's parents' house until August 2007, when Vasquez moved out.

On the night of September 22, 2007, Vasquez and Castillo had plans to go out together. Vasquez never picked up Castillo, and when he could not be reached, Castillo went out with her friends instead. Vasquez and Castillo finally talked on the phone at two o'clock in the morning. Vasquez said he had gotten a flat tire.

Castillo then went to her cousin's (Belinda Fernandez's) house; Fernandez, her husband, and a number of the husband's friends were in the house. Vasquez and Castillo talked on the phone again, and Castillo told Vasquez where she was. Vasquez arrived at Fernandez's house about twenty minutes later. Driving a blue Durango, Vasquez parked in the street, and Castillo walked up to the car.

Vasquez was angry and asked Castillo what she was doing with all the men. Castillo replied that she did not know who the men were. Vasquez then accused her of "ho'ing around" and "fucking around with all these guys" and demanded Castillo to "get in the fucking car." When Castillo responded that

2

Fernandez would take her home instead, Vasquez grabbed a gun from the console of his car and held it to Castillo's hip. Castillo got in the car as Fernandez tried to talk to Vasquez and get the gun away from him. Castillo then got out of the car, but Vasquez pointed the gun at her, so she got back in, and they drove away.[2]

Vasquez drove west on Interstate Highway 820 and told Castillo he was going to take her where "nobody could find" her. Fernandez called Castillo's father, Victor, and told him what had happened. Victor went to look for his daughter as he began calling Vasquez and Castillo, although it is unclear which cell phone he called. Victor could hear both Castillo crying and Vasquez saying not to say anything about where they were.[3] Vasquez told Victor that he would drop Castillo off at a nearby Whataburger, but when Victor got there, Vasquez and Castillo were not there. Victor called again, and Vasquez said he would take Castillo home. Vasquez then drove back towards Fernandez's house.

---

[2] Castillo testified that she felt like she had no choice but to get in Vasquez's vehicle. She stated, "I was just trying to listen. I didn't want to -- I was scared. I was thinking about jumping out, but we were on the freeway and I didn't."

[3] Castillo explained, "[Vasquez] said not to tell [Castillo's father] where we were at."

Before they arrived, Vasquez pulled over and stuck the gun in his mouth. Castillo took it out and set it on the floor by her feet. When they stopped at Fernandez's house, Castillo ran inside, and Vasquez drove away.

Different witnesses estimated the time Vasquez and Castillo had been in the car as between forty-five minutes and an hour and forty-five minutes. Castillo asked Fernandez to call the police. Fort Worth Police Department Officer Christian Dominguez responded to the call. Victor arrived shortly thereafter.

The grand jury indicted Vasquez with aggravated kidnapping.[4] At trial, Vasquez requested the inclusion of a charge on the lesser-included offense of unlawful restraint; the trial court denied this request. The jury found Vasquez guilty of the lesser-included offense of kidnapping. They found the repeat offender paragraph true and recommended that Vasquez be sentenced to twenty years' confinement. The trial court sentenced Vasquez according to the jury's recommendation. This appeal followed.

---

[4] The indictment alleged that Vasquez committed the offense by intentionally or knowingly abducting Castillo through restraining her without her consent and moving her from one place to another with the intent to prevent her liberation by secreting her or threatening to use deadly force with a deadly weapon. *See* Tex. Penal Code Ann. § 20.04(b) (Vernon 2003). The indictment contained a repeat offender notice related to Vasquez's January 2006 conviction for aggravated assault.

4

**The Exclusion of a Lesser-included Offense from the Jury Charge**

In his first point, Vasquez contends that the trial court erred by refusing to include his requested jury instruction regarding the lesser-included offense of unlawful restraint. We use a two-step analysis to determine whether Vasquez was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). "An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Tex. Code Crim. Proc. Ann. art. 37.09(1); *see Hall*, 225 S.W.3d at 536. This inquiry is a question of law. *Hall*, 225 S.W.3d at 535. It does not depend on the evidence to be produced at trial but is performed by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense. *Id.* at 525, 535–36.

Second, some evidence must exist in the record that would permit a jury to rationally find that if Vasquez is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim.

App. 2005).   The evidence must be evaluated in the context of the entire record.  *Moore*, 969 S.W.2d at 8.   There must be some evidence from which a rational jury could acquit Vasquez of the greater offense (aggravated kidnapping) while convicting him of the lesser included offense (unlawful restraint).  *Id.*  The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.  *Id.*  Anything more than a scintilla of evidence may be sufficient to entitle Vasquez to a lesser charge.  *Hall*, 225 S.W.3d at 536.

The second prong acknowledges that there are factual circumstances in which an offense is indeed a lesser-included offense under the first prong, but a jury charge instruction will not be required because the condition—that there is at least some evidence that the defendant is not guilty of the greater offense but is guilty only of the lesser—is not met.  *See Flores v. State*, 245 S.W.3d 432, 441 (Tex. Crim. App. 2008); *Pickens v. State*, 165 S.W.3d 675, 679 (Tex. Crim. App. 2005).  In such a case, the offense remains a lesser-included offense, but the trial court is not required to instruct the jury on it.  *See Flores*, 245 S.W.3d at 441; *Pickens*, 165 S.W.3d at 679*.*

That is what happened in this case.   Under Vasquez's indictment, aggravated kidnapping occurs when a person "intentionally or knowingly

6

abducts[5] another person and uses or exhibits a deadly weapon during the commission of the offense." Tex. Penal Code Ann. § 20.04(b). Unlawful restraint occurs when a person "intentionally or knowingly restrains[6] another person." *Id.* § 20.02(a) (Vernon 2003). Under article 37.09, unlawful restraint is a lesser-included offense of aggravated kidnapping. *Schweinle v. State*, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996);[7] *see Mayer v. State*, 274 S.W.3d 898, 900 (Tex. App.—Amarillo 2008, pet. filed); *Jenkins v. State*, 248 S.W.3d 291, 298 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Thus, Vasquez satisfies the first prong of the test.

However, Vasquez cannot satisfy the second prong. Vasquez contends that a jury could find that he restrained Castillo (by restricting her movements)

---

[5] "Abduct" means to restrain a person with intent to prevent the person's liberation by secreting or holding the person in a place where the person is not likely to be found or by using or threatening to use deadly force. Tex. Penal Code Ann. § 20.01(2) (Vernon Supp. 2008).

[6] "Restrain" means restricting "a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." Tex. Penal Code Ann. § 20.01(1). Restraint is without consent if it is accomplished by force, intimidation, or deception. *Id.* § 20.01(1)(A).

[7] At the time the Texas Court of Criminal Appeals decided the *Schweinle* case, the offense now known as unlawful restraint was called "false imprisonment." *See Schweinle*, 915 S.W.2d at 19.

7

but that he did not abduct her (by preventing her liberation) and that the jury could therefore convict him of unlawful restraint but not aggravated kidnapping.

Witnesses testified that Vasquez forced Castillo into the car against her will at gunpoint, did not take her home, and, most importantly, told her not to tell others where they were. A moving car has been held to be a place where a person is not likely to be found. *See Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim. App. [Panel Op.] 1980); *Francis v. State*, No. 02-05-00046-CR, 2006 WL 2034280, at *4 (Tex. App.—Fort Worth July 20, 2006, pet. ref'd) (mem. op., not designated for publication). Vasquez argues that he intended to take Castillo home and thus did not intend to prevent her liberation.

However, even if Vasquez originally intended to take Castillo home, his subsequent actions substantiate his prevention of her liberation from his car. By keeping Castillo in the car for as long as an hour and forty-five minutes, driving her around, telling her that he was taking her to a place that "nobody could find" her, and preventing Victor from finding her at the Whataburger, Vasquez precluded Castillo's liberation; he did more than merely restrict her movements.

Thus, based upon the undisputed evidence presented by the State, no rational jury could find Vasquez innocent of aggravated kidnapping but guilty

8

of unlawful restraint.  *See Hall*, 225 S.W.3d at 536.  We overrule Vasquez's first point.

## Factual Sufficiency of the Evidence

In his second point, Vasquez contends that the evidence is factually insufficient to support his kidnapping conviction.  When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.  *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not

9

enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704.

The jury convicted Vasquez of kidnapping, which occurs when a person "intentionally or knowingly abducts another person." Tex. Penal Code Ann. § 20.03(a) (Vernon 2003). Vasquez challenges the evidence supporting the

jury's finding that he intended to prevent Castillo's liberation by secreting her in a place she was not likely to be found; he does not challenge that he restrained Castillo.

Specifically, Vasquez contends that he intended to take Castillo home and thus lacked any intent to prevent her liberation. He argues that because her home is not a place she is not likely to be found, he did not satisfy the secreting requirement. *See Schweinle*, 915 S.W.2d at 19. He acted intentionally by preventing liberation through secreting Castillo in a place she was not likely to be found if it was his conscious objective or desire to do so; he acted knowingly if he was aware that the prevention of her liberation would occur. *See* Tex. Penal Code Ann. § 6.03(a), (b) (Vernon 2003).

The intentional or knowing state of mind of a defendant may be proved without direct evidence; such a state of mind may be "inferred from circumstantial evidence such as [the defendant's] acts, words, [or] conduct." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see Mashburn v. State*, 272 S.W.3d 1, 14 (Tex. App.—Fort Worth 2008, pet. struck); *Krause v. State*, 243 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (explaining that "[p]roof of a culpable mental state almost invariably depends upon circumstantial evidence"). When reviewing the jury's decision that Vasquez intentionally or knowingly prevented Castillo's liberation by

11

secreting her in a place she was not likely to be found, it is "not necessary that [we] find to [our] own satisfaction that such was [his] intent.  It is enough for us to find that 'any' rational jury could have so found beyond a reasonable doubt." *Brimage v. State*, 918 S.W.2d 466, 476 (Tex. Crim. App. 1994).

The evidence in the record is factually sufficient to support Vasquez's conviction.  Because Vasquez did not present any evidence to contradict the opinions and observations of the witnesses, the jury's implicit determination about Vasquez's state of mind could only be reversed for factual insufficiency if the evidence was so weak that the determination was clearly wrong and manifestly unjust. *See Lancon,* 253 S.W.3d at 705.  We cannot conclude that standard has been satisfied.

Vasquez's assertion that he intended to take Castillo home does not make sense because there is nothing in the record indicating why he did not simply do that.[8]  Instead, he forced Castillo into the car and drove her around for a long period of time during which she was not found.  And even if there was more evidence in the record that supported Vasquez's asserted intentions, the jury was free to either believe or disbelieve his conflicting theory. *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001) (stating

---

[8] Fernandez's house was only about ten miles from Castillo's parents' house, where she was staying.

12

that it "is a jury, not a reviewing court, that accepts or rejects reasonably equal competing theories"); *Gregory v. State*, 159 S.W.3d 254, 261 (Tex. App.—Beaumont 2005, pet. ref'd).

Affording the jury's decision appropriate deference under the authority cited above, we conclude that the evidence in the record and recited above is factually sufficient to show that Vasquez intentionally or knowingly prevented Castillo's liberation by secreting her to a place she was not likely to be found. We therefore overrule Vasquez's second point.

### Conclusion

Having overruled both of Vasquez's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 4, 2009